UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ORIGINAL SIXTEEN TO ONE MINE, INC., a California Corporation; MICHAEL MILLER; HUGH DAN O'NEILL III; ROBERT BESSO, JONATHAN FERRELL; TOM WOODFIN; and KEITH ROBERTSON, <br><br> Plaintiffs, <br><br> v. <br><br> QUARTZVIEW, INC., a California Corporation; ROGER HAAS; SIMON P. WESTBROOK; DOUGLAS W. CHARLTON; CHARLES CROMPTON JR., and DOES 1 through 100, inclusive, <br><br> Defendants, | No. 2:23-cv-000376-TLN-SCR <br><br> **ORDER** |

    This matter is before the Court on Defendants Quartzview, Inc. ("Quartzview"), Roger Haas ("Haas"), and Simon P. Westbrook's ("Westbrook") (collectively, "Defendants") Motion to Dismiss.[1]  (ECF No. 19.)  Plaintiffs The Original Sixteen to One Mine, Inc. ("OSTO"), Michael

---

[1] The Court notes only Defendants Quartzview, Inc., Roger Haas, and Simon P. Westbrook are parties to the instant motion.  Defendants Douglas W. Charlton and Charles Crompton Jr. filed an answer to Plaintiffs' Complaint.  (ECF No. 5.)  Thus, when the Court uses "Defendants" in this Order, the Court is referring only to the moving Defendants Quartzview, Haas, and

1

Miller, Hugh Dan O'Neill III, Robert Besso, Jonathan Ferrell, Tom Woodfin, and Keith Robertson (collectively, "Plaintiffs") filed an opposition. (ECF No. 21.) Defendants filed a reply. (ECF No. 23.) For the reasons set forth below, the Court GRANTS Defendants' motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court need not recite the factual background of this case as it is set forth in full in the Court's March 29, 2024 Order granting in part and denying in part Defendants' prior motion to dismiss. (ECF No. 11.) Plaintiffs filed a First Amended Complaint ("FAC") on April 27, 2024, alleging the following eleven causes of action under both federal and California law: (1) manipulation of securities to gain control; (2) making false and misleading statements in connection with a tender offer in violation of § 14(e) of the Securities and Exchange Act; (3) declaratory relief; (4) violation of California Corporations Code §§ 25400–25304; (5) breach of contract by OSTO against Quartzview; (6) breach of contract; (7) breach of covenant of good faith and fair dealing; (8) inducing breach of contract; (9) elder financial abuse; (10) theft in violation of California Penal Code § 484; and (11) unfair competition in violation of California Business and Professions Code § 17200. (ECF No. 12.) Defendants filed the instant motion to dismiss on May 17, 2024. (ECF No. 19.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*

---

Westbrook.

2

*v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

*See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III.    ANALYSIS

Defendants move to dismiss Plaintiffs' first, second, sixth, and seventh causes of action. (ECF No. 19.)  The Court will address each of Defendants' arguments in turn.

#### A.    Claim One

In Plaintiffs' first cause of action, Plaintiffs seek relief for Defendants' manipulation of securities to gain control in violation of § 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j; Rule 10-b5(a), (b), (c)).  (ECF No. 12 at 18–23.)

Section 10(b) of the Securities and Exchange Act of 1934 provides that it is unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"  15 U.S.C. § 78j(b).  Securities and Exchange Commission ("SEC") Rule 10b-5 provides:

> It shall be unlawful for any person . . .
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

"To state a securities fraud claim under § 10(b) of the Act and Rule 10b-5, a plaintiff must show (1) a material misrepresentation or omission, (2) scienter, (3) in connection with the

4

purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation." *Mueller v. San Diego Entertainment Partners, LLC*, 260 F. Supp. 3d 1283, 1291 (S.D. Cal. 2017) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011)). The Private Securities Litigation Reform Act ("PSLRA") imposes "a heightened pleading requirement under securities fraud actions under § 10(b) and Rule 10b-5 requiring that falsity and scienter be plead with particularity." *Id.* (citing *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 476 (2013); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009)).

Defendants argue Plaintiffs fail to sufficiently allege scienter, reliance, and loss causation. (ECF No. 19 at 6–7.) The Court will address each of these arguments in turn.

### i. Scienter

Defendants argue Plaintiffs' eight alleged instances of Defendants' misconduct is insufficient from a scienter perspective, as no specific details are provided to link the alleged fraudulent statement to a specific defendant. (*Id.* (citing *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011)).) In opposition, Plaintiffs maintain the FAC states facts to "compel a strong inference of scienter" because Defendants have "engaged in not less than eight separate events of the creation and dissemination of false and misleading information intended to influence the belief in the stockholders of OSTO that the securities of the company were declining in value or were essentially valueless." (ECF No. 21 at 4–5.) Plaintiffs assert each of these eight statements were made by "specific Defendants with the knowledge that they were false" or, at a minimum, with recklessness. (*Id.* at 5.)

Under the PSLRA, "a complaint alleging that the defendant made a false or misleading statement must: (1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading, 15 U.S.C. § 78u-4(b)(1); and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, § 78u-4(b)(2)." *Mueller*, 260 F. Supp. 3d at 1291 (internal citation and quotation marks omitted). It is not sufficient that a reasonable finder of fact could plausibly infer the requisite state of mind, but "[r]ather, the inference of scienter must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* (internal citation and quotation marks omitted). To

establish scienter, a complaint must allege the defendant intentionally or with deliberate recklessness made false or misleading statements. *Id.* at 1291–92. Facts that show "mere recklessness" or "a motive to commit fraud and opportunity to do so" are insufficient to prove "a strong inference of deliberate recklessness." *Id.*

Here, Plaintiffs allege eight separate instances of how Defendants made material misrepresentations to gain control of OSTO. (ECF No. 12 at 8–13, 18–23.) Although Plaintiffs' allegations are lengthy, the Court will first summarize the eight separate instances and then evaluate whether Plaintiffs have adequately pleaded scienter.

First, Plaintiffs allege Haas, Westbrook, and Quartzview on June 16, 2016, authorized and paid for a document written by Charlton entitled "Preliminary Conditions Assessment 16 to 1 Mine," which "was nothing more than a slanderous hit piece designed and intended to depress the value of OSTO stock and disparage the management of OSTO." (*Id.* at 8–9.) The document allegedly states:

> With the inferred low valuation of the company, attracting capital will be difficult. This means that exits for shareholders will be limited, and a future of declining share value is likely as Company assets are liquidated to pay for ongoing operating cost and increasing liabilities. A condition of capitalization should be replacement of current Management with a term of technically and financially competent executives and specialists.

(*Id.* at 8.)

Second, Plaintiffs allege Haas, Westbrook, Charlton, and other Defendants on November 23, 2016 and October 8, 2019, respectively, promised two former OSTO employees future employment and compensation after Defendants take control of OSTO if the individuals reported to the Sierra County Sheriff that a thousand gallons of waste oil was buried on OSTO's property. (*Id.* at 9–10.) Plaintiffs maintain no such event occurred. (*Id.* at 9.) Plaintiffs allege the Sierra County Sheriff investigated the first report and did not pursue the matter for a lack of evidence and the Sierra County District Attorney filed a criminal complaint in response to the second report, which was also dismissed for lack of evidence. (*Id.* at 9–10.) Plaintiffs allege Defendants' actions resulted in the Sierra County Sheriff conducting investigations the same day geologists in the employ of a company were performing due diligence research before entering

into a transaction with OSTO. (*Id.*) Plaintiffs maintain the investigation caused the due diligence effort to immediately stop and caused the failure of an injection of $30 million in non-debt working capital for OSTO. (*Id.*)

Third, Plaintiffs allege Haas filed a false report with the Nevada County Sheriff on August 17, 2018, that explosives had been stolen from OSTO. (*Id.*) Plaintiffs maintain this was false and no action was taken. (*Id.*)

Fourth, Plaintiffs allege Quartzview, Haas, Westbrook, and Charlton on August 31, 2016 and September 21, 2016, falsely represented to the California Central Valley Regional Water Quality Control Board ("Board") that OSTO's surface property contained toxic solid waste and Defendants owned the water rights. (*Id.* at 11.) Again, Plaintiffs maintain this was false as the Board took no action upon these reports. (*Id.*)

Fifth, Plaintiffs allege that on three separate occasions (August 31, 2016, September 31, 2016, and December 16, 2016), Haas, Westbrook, and other Defendants falsely represented to the U.S. Department of Labor Mine Safety and Health Administration that OSTO was being operated in a hazardous manner — namely, that some of OSTO's employees used drugs and carried firearms in the mine. (*Id.*) Plaintiffs maintain no citation was issued by the agency. (*Id.*)

Sixth, Plaintiffs allege Haas, Westbrook, and Charlton contacted the State Compensation Insurance Fund ("State Fund")[2] and reported OSTO misrepresented its employee census and engaged in fraudulent conduct. (*Id.*) Plaintiffs maintain the State Fund investigated this charge and found it to be untrue. (*Id.*)

Seventh, Plaintiffs allege that on January 1, 2016, Haas and other Defendants instructed a Quartzview employee to install surveillance cameras and vehicle location devices in OSTO "to manufacture proof of unsafe working conditions or practices and the theft of valuable ore." (*Id.* at 12–13.) Plaintiffs contend this surveillance was not a part of the agreed-upon operations between OSTO and Quartzview, and it did not result in the discovery of any weapons or drug use

---

[2] Although Plaintiffs explicitly state "State of California Insurance Fund," no such agency exists and the Court assumes Plaintiffs are referring to the State Compensation Insurance Fund.

7

(*Id.* at 13.) Plaintiffs allege it did disclose the location of gold by OSTO employees,[3] which Defendants falsely represented to OSTO shareholders as theft by OSTO employees. (*Id.*)

Eighth, Plaintiffs allege Haas demanded a list of OSTO securities owners and their addresses to communicate directly with the shareholders. (*Id.*) Plaintiffs allege that on February 25, 2019, Haas, Westbrook, Charlton, and other Defendants obtained a court order requiring OSTO's management to provide the information to Haas for his personal use and not for use by Quartzview. (*Id.*) Plaintiffs contend that, regardless of the court order and California law, Haas, Westbrook, and Charlton provided the confidential information to Quartzview and others. (*Id.*)

For each of these misrepresentations, Plaintiffs generally allege that Defendants made these representations to the general public, OSTO's stockholders, and the aforementioned boards, agencies, and law enforcement as a part of their effort to manipulate the price of OSTO stock, suppress the value of outstanding shares, reduce confidence in OSTO's management, and gain control of OSTO.[4] (*Id.* at 8–14.) Plaintiffs also generally allege these misrepresentations were made "with conscious recklessness," "with fraudulent intent," and "without any regard for the truth of the statement made." (*Id.*) Further, Plaintiffs allege that as a direct result of these misrepresentations, Defendants gained control of OSTO. (*Id.*) Plaintiffs clarify that the aforementioned false statements and misrepresentations "caused stockholders of OSTO in the purported number of shares to agree to sell their stock to Quartzview in response to the tender offer . . . and gain control of OSTO." (*Id.* at 12.)

///

---

[3] The FAC uses the language: "The surveillance did not result in the discovery of any weapons or drug use but did disclose the location of Gold by OSTO employees, which was falsely represented to OSTO shareholders as theft by OSTO employees." (*Id.* at 12.) The Court finds the language "did disclose the location of Gold by OSTO employees" to be confusing. However, relevant to the issue of scienter here, it is clear that Plaintiffs allege Defendants misrepresented to OSTO shareholders that OSTO employees engaged in the theft of gold.

[4] Although Defendants argue Plaintiffs concede in their opposition that five of the alleged false publications were made to government agencies and not directly made to shareholders (ECF No. 23 at 3), a closer look at the FAC reveals that Plaintiffs allege all the misrepresentations except the fifth and eighth were publicized, reported, or represented to OSTO stockholders (ECF No. 12 at 8–14).

In the first seven instances of alleged material misrepresentations, Plaintiffs clearly identify each of the statements "alleged to have been misleading" and "the reasons why the statement is misleading." *See Mueller*, 260 F. Supp. 3d at 1291. Further, in the first seven instances, Plaintiffs have stated with particularity sufficient facts to give rise to a strong inference Defendants acted with the required state of mind — namely, that the misrepresentations were made with "conscious recklessness," "with fraudulent intent," and "without any regard for the truth of the statement made. *Id.*; (ECF No. 12 at 8–14). Plaintiffs clearly allege Defendants "knew [the] statements were false, or [were] consciously reckless as to their truth or falsity." *See In re VeriFone Holdings, Inc. Securities Litigation*, 704 F.3d 694, 702 (9th Cir. 2012). With respect to the eighth incident, however, Plaintiffs do not explain why providing the confidential information about OSTO's shareholders to Quartzview and others is necessarily a material misrepresentation.

Defendants contend Plaintiffs "ignore the fact that only those who have authority over the content of a misrepresentation or misstatement are subject to liability." (ECF No. 19 at 6 (citing *Janus Capital Grp., Inc.*, 564 U.S. at 142–43).) Plaintiffs maintain they clearly allege each of the individual Defendants were acting on behalf of Quartzview. (ECF No. 21 at 6.) However, the sections of the FAC to which Plaintiffs cite only provide an overview of the individual Defendants and do not provide any information on how they were acting on behalf of Quartzview. (ECF No. 12 at 3–4.) Indeed, the Supreme Court in *Janus Capital Grp., Inc.* clarified that there is a "narrow scope" in Rule 10b-5's implied private right of action, and liability is not expanded "beyond the person or entity that ultimately has authority over a false statement." 564 U.S. at 144. To fully establish scienter, Plaintiffs must connect each alleged fraudulent statement to the individual Defendant who made the statement. Accordingly, the Court finds scienter is not established.

      *ii.*  *Reliance*

Defendants argue Plaintiffs do not allege how they relied on Defendants' misrepresentations in deciding to buy or sell the company's stock. (ECF No. 19 at 7.) Plaintiffs maintain the FAC states facts establishing reliance as Plaintiffs and other stockholders would

have considered the information "specific Defendants" created in the "manipulative report" to be important in deciding whether to sell their stock. (ECF No. 21 at 6.) Plaintiffs note the "manipulative report" that was stamped "confidential" and distributed to OSTO stockholders was "intended to create the illusion that the report was an objective appraisal" of OSTO's operations, rather than "the falsified propaganda." (*Id.*)

"Reliance establishes the causal connection between the alleged fraud and the securities transaction." *Desai v. Deutsche Bank Securities, Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009). "To say that a plaintiff relied on a defendant's bad act is to say that the defendant's actions 'played a substantial part in the plaintiff's investment decision.'" *Id.* (citing *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 (9th Cir. 1988)). This element requires a plaintiff to establish "that he would not have engaged in the transaction in question had he known about the fraud." *Id.*

Here, Defendants are correct that Plaintiffs must allege facts to show how they became aware of the report and what role it played in their decision-making to adequately establish reliance. (ECF No. 23 at 4.) Further, with respect to the second through seventh instances of alleged misrepresentation, Plaintiffs must also clearly allege how they relied on those misrepresentations and similarly, how Plaintiffs became aware of these misrepresentations and what role they played in decision-making. Plaintiffs have not established that they "would not have engaged in the transaction in question had [they] known about the fraud." *Desai*, 573 F.3d at 939. Accordingly, the Court finds reliance is not established.

### iii.   Loss Causation

Defendants argue Plaintiffs do not allege how Defendants "gained control" of OSTO, as it is unclear how the "supposed misrepresentations led to Defendants allegedly taking over this company." (ECF No. 19 at 6.) In opposition, Plaintiffs assert the FAC adequately alleges loss causation because the false and misleading statements "inexorably caused" Plaintiffs' and other stockholders to undervalue OSTO's securities. (ECF No. 21 at 7 (citing ECF No. 12 at 14).)

The Ninth Circuit has summarized loss causation as follows:

> Loss causation is shorthand for the requirement that investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss. Thus, like a plaintiff claiming deceit at

10

>common law, the plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event.

*Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (internal quotation marks and citations omitted).

Here, Plaintiffs allege the foregoing false statements and misrepresentations "had the intended effect and depressed the value of the securities of OSTO held by Plaintiffs and other stockholders from ten dollars (US) per share to less than one dollar (US) per share on or about March 1, 2022." (ECF No. 12 at 14.) Additionally, as previously stated, Plaintiffs also allege the misrepresentations "caused stockholders of OSTO in the purported number of shares to agree to sell their stock to Quartzview in response to the tender offer . . . and gain control of OSTO." (*Id.*) Accordingly, the Court finds this element is sufficiently pleaded.

However, because Plaintiffs fail to establish the elements of scienter and reliance, Defendants' motion to dismiss Claim One is GRANTED with leave to amend.

### B. Claim Two

In Plaintiffs' second cause of action, Plaintiffs allege Defendants made "false and misleading statements in connection with a tender offer" in violation of § 14(e) of the Securities and Exchange Act of 1934. (ECF No. 12 at 23–27.)

To state a claim under § 14(e) and to satisfy the PSLRA, a plaintiff must plead with particularity: (a) "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made upon information and belief, the complaint shall state with particularity all facts on which that belief is formed"; (b) "with respect to each act or omission . . . facts giving rise to a strong inference that the defendant acted with the required state of mind"; and (c) "that the act or omission . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. §§ 78u-4(b)(1), (b)(2)(A), (b)(4).

Defendants argue the FAC fails to allege facts to establish allegations against individual Defendants and loss causation. The Court will address each of these arguments in turn.

11

                    *i.*      *Allegations Against Individual Defendants*

Defendants argue Plaintiffs have failed to allege sufficient facts to state a claim as to each of the named Defendants, including that Defendants had any connection with the tender offer or the alleged false and misleading statements in connection with the tender offer. (ECF No. 19 at 8.) Defendants contend Plaintiffs appear to be trying to hold all of them liable under "some group pleading doctrine, which is inappropriate when dealing with a PSLRA claim." (*Id.*) In opposition, Plaintiffs assert they have alleged the misstatements and omissions of the individual Defendants with particularity, as there are eight specific events of misstatements, omissions, and lack of corrective activity in Plaintiffs' first claim for relief. (ECF No. 21 at 8.) Further, Plaintiffs contend the FAC identifies the specific Defendants and their relationship with Quartzview and the actions with respect to the eight specific events. (*Id.*)

Again, as an initial matter, the Court notes only Quartzview, Haas, and Westbrook are parties to the instant motion to dismiss. Defendants fail to demonstrate that they have standing to bring arguments on behalf of Charlton and Crompton, who are not parties to the instant motion. Thus, the Court will only address Defendants' arguments as they pertain to Quartzview, Haas, and Westbrook.

Here, to the extent that Plaintiffs attempt to hold Quartzview, Haas, and Westbrook liable under the group pleading doctrine as Defendants contend, the Court has already concluded that the group pleading doctrine is inconsistent with the strict pleading requirements of the PSLRA. (ECF No. 11 at 7.) Further, to the extent Plaintiffs assert they have alleged the misstatements and omissions of individual Defendants with particularity, Plaintiffs are mistaken. The sections of the FAC to which Plaintiffs cite only provide an overview of the individual Defendants and do not provide any information on how they were acting on behalf of Quartzview. (ECF No. 12 at 3–4, 8–14.) Plaintiffs must connect each alleged fraudulent statement to the individual Defendant who made the statement. Thus, the Court finds Plaintiffs have not sufficiently alleged a § 14(e) claim against Quartzview, Haas, or Westbrook.

                    *ii.*      *Loss Causation*

Defendants argue that while "Plaintiffs generally plead harm to shareholders in the

1    'diminution of fair market value of the shares through the manipulative acts of Defendants,'"

2    Plaintiffs do not allege causation between the alleged depressed share price as a result of

3    Defendants' misleading statements and the shareholder reliance on those statements. (ECF No.

4    19 at 8.) Defendants contend Plaintiffs have not alleged any facts to quantify their economic

5    harm or the difference between the price Plaintiffs and other shareholders accepted from

6    Defendants for their shares and the "true value" of the shares. (*Id.*)

7        Plaintiffs do not address this argument in their opposition. (*See* ECF No. 23.) Therefore,

8    Plaintiffs concede these arguments. *See Crandall v. Teamsters Loc. No. 150*, No. 2:23-CV-

9    03043-KJM-CSK, 2024 WL 3889916, at *5 (E.D. Cal. Aug. 20, 2024) (finding plaintiff

10   abandoned claims not raised in opposition to defendants' motion to dismiss).

11        The Court previously granted Plaintiffs leave to amend their second cause of action. (ECF

12   No. 11 at 6–7.) Plaintiffs have not sufficiently amended the allegations in the FAC and

13   Defendants have moved to dismiss on largely the same grounds. Plaintiffs have not even opposed

14   all of Defendants' arguments with respect to this cause of action. Therefore, Defendants' motion

15   to dismiss Claim Two is GRANTED without leave to amend.

16                C.     <u>Claims Six and Seven</u>

17        Defendants argue Claims Six and Seven fail to allege sufficient facts to state a claim.

18   (ECF No. 19 at 8–9.) Plaintiffs do not address Defendants' argument in their opposition, nor

19   address Claims Six or Seven at all. (*See* ECF No. 21.) Therefore, Plaintiffs concede these

20   arguments. *See Crandall*, 2024 WL 3889916, at *5 (finding plaintiff abandoned claims not raised

21   in opposition to defendants' motion to dismiss). Defendants' motion to dismiss Claims Six and

22   Seven is GRANTED without leave to amend.

23       **IV.**     **CONCLUSION**

24        For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss (ECF No.

25   19) as follows:

26     1. Defendants' motion to dismiss Claim One is GRANTED with leave to amend; and

27     2. Defendants' motion to dismiss Claims Two, Six, and Seven is GRANTED without leave

28        to amend.

Plaintiffs may file an amended complaint, only to cure the deficiencies addressed in Claim One, not later than thirty (30) days from the electronic filing date of this Order. Defendants shall file a responsive pleading not later than twenty-one (21) days from the filing date of the amended complaint. If Plaintiffs opt not to amend the complaint, the case will proceed on the remaining claims in the FAC (Claims Three, Four, Five, Eight, Nine, Ten, and Eleven against all Defendants and Claims Two and Six against Douglas W. Charlton and Charles Crompton Jr.). Defendant shall file an answer not later than twenty-one (21) days from Plaintiffs' deadline for filing an amended complaint.

　　　　IT IS SO ORDERED.

Date: January 17, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE