UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ORIGINAL SIXTEEN TO ONE MINE, INC., a California Corporation; MICHAEL MILLER; HUGH DAN O'NEILL III; ROBERT BESSO, JONATHAN FERRELL; TOM WOODFIN; and KEITH ROBERTSON, | No. 2:23-cv-000376-TLN-SCR |
| Plaintiffs, | |
| v. | **ORDER** |
| QUARTZVIEW, INC., a California Corporation; ROGER HAAS; SIMON P. WESTBROOK; DOUGLAS W. CHARLTON; and DOES 1 through 100, inclusive, | |
| Defendants. | |

This matter is before the Court on Defendants Quartzview, Inc. ("Quartzview"), Roger Haas ("Haas"), and Simon P. Westbrook's ("Westbrook") (collectively, "Defendants") Motion for Temporary Restraining Order ("TRO"). (ECF No. 58.) Plaintiff Michael Miller ("Miller") filed an opposition. (ECF No. 59.) For the reasons set forth below, the Court hereby DENIES Defendants' motion.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The case arises from a tender offer made by Quartzview and Haas to Plaintiffs for their shares of OSTO stock.[1]  (ECF No. 1 at 11.)  In summary, OSTO — a publicly traded, long operating gold mine — entered into a License and Services Agreement with Quartzview, allowing Quartzview to develop and test sensing technology at OSTO's mines.  (*Id.* at 5–6.)  Plaintiffs allege that over the next decade Quartzview failed to find gold but used its access to gather nonpublic information about OSTO's managements, finances, and strategy, then undertook a campaign to disparage OSTO and depress its stock price as part of a plan to gain control.  (*Id.* 6–9.)  On March 2, 2022, Defendants made a tender offer for OSTO shares, which Plaintiffs and other shareholders accepted.  (*Id.* at 11–12.)  Although Defendants later represented in a filing with the Securities and Exchange Commission that they owned the tendered shares, Plaintiffs allege Defendants never paid shareholders for the shares.  (*Id.* at 12.)

On February 28, 2023, Plaintiffs initiated this action against Defendants, alleging the following eight causes of action under both federal and California law: (1) manipulation of securities to gain control of OSTO; (2) making false and misleading statements in connection with a tender offer in violation of Section 14(e) of the Securities and Exchange Act; (3) declaratory relief; (4) violations of the California Corporations Code § 25400; (5) breach of contract and rescission of contract; (6) elder financial abuse; (7) theft in violation of California Penal Code § 484; and (8) unfair competition in violation of California Business and Professions Code § 17200.  (ECF No. 1.)

On May 15, 2026, Defendants filed the instant motion seeking: (1) a TRO requiring Miller to cease improper entry and interference with Quartzview's property, for which Defendants assert he has no right to enter and (2) sanctions in the amount of $3,640.00.  (ECF No. 58 at 2, 11.)

## II.   STANDARD OF LAW

A temporary restraining order is an extraordinary remedy.  The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing.  *See* Fed. R. Civ. P. 65.  In

---

[1]   The factual background of this case is set forth in full in the Court's March 29, 2024 Order granting in part and denying in part Defendants' first motion to dismiss.  (ECF No. 11.)

general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

For both a TRO and a preliminary injunction, a party must establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A party must "make a showing on all four prongs" of the *Winter* test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a party's motion for a TRO or preliminary injunction, a district court may weigh the party's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO or preliminary injunction even if there are "serious questions on the merits . . . so long as the [party] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if Defendant's likelihood of success on the merits is questionable, to obtain a TRO or preliminary injunction Defendant must demonstrate the balance of hardships "tip[ ] sharply" in their favor. *Id.* at 1134–35.

### III.    ANALYSIS

Defendants allege Miller broke into or attempted to break into Quartzview's property on

3

at least twelve occasions, exposing Quartzview to potential fines of $2,000 per uncertified entrant.  (ECF No. 58 at 7–8.)  In opposition, Miller alleges he regularly conducted preannounced inspections of the mine site since approximately March 25, 2022, when OSTO entered into a Mineral Lease and Operating Agreement with Quartzview.  (ECF No. 59 at 2.)

The Court notes the parties briefing is entirely focused on whether Defendants will suffer irreparable harm but fails to address: (1) a threshold procedural issue — whether Defendants have standing to file a motion for TRO despite not having filed a counterclaim asserting a cause of action that would support injunctive relief — or (2) the remaining *Winter* factors.

A party must make a clear showing on all four prongs of the *Winter* test to be eligible for the extraordinary remedy of a temporary restraining order.  *See All. for the Wild Rockies*, 632 F.3d at 1135.  Because Defendant has not made any showing as to likelihood of success on the merits, as to the balance of equities, or that an injunction is in the public interest, the Court need not address the parties' argument as to irreparable harm.  *See Winter*, 555 U.S. at 20; *see also All. for Wild Rockies*, 632 F.3d at 1135.

However, even if the Court were to consider the parties arguments, the Court would find Defendants fail to sufficiently explain why they did not seek injunctive relief earlier.  Eastern District of California Local Rule 231(b) provides that "the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order."  Should the Court find such a delay, the Court may deny the requested TRO on those grounds alone.  L.R. 231(b).  Here, Defendants did not file the instant application until May 15, 2026, almost six weeks after the first alleged break-in and after at least twelve additional incidents had been photographed and recorded.  Defendants had actual notice of the alleged ongoing harm no later than April 7, 2026, yet offer no explanation for their delay in seeking emergency relief.  *See Deck v. Wells Fargo Bank, N.A.*, No. 17CV00234MCEKJNPS, 2017 WL 499224, at *2 (E.D. Cal. Feb. 6, 2017) (finding undue delay where plaintiff had earlier notice of the conduct underlying the asserted harm).  Defendants' delay therefore contradicts their allegations of irreparable injury and, on its own, supplies an independent basis for denial of the application.  *See Mammoth*

4

*Specialty Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC*, No. CIV-S10-0864-LKK-JFM, 2010 WL 1539811, at *2 (E.D. Cal. Apr. 16, 2010) (denying a TRO application solely based on Local Rule 231(b) because "plaintiff did not file the motion until four business days before the scheduled foreclosure sale"); *Avila v. Citi Mortg. Inc.*, No. 1:17-cv-1581-LJO-BAM, 2017 WL 5871473, at *1 (E.D. Cal. Nov. 29, 2017) (finding it appropriate to deny plaintiff's TRO request under Local Rule 231(b) because plaintiff failed to "explain why he waited until the last possible moment to attempt to block the sale.").

### IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Temporary Restraining Order is hereby DENIED.  (ECF No. 58.)

IT IS SO ORDERED.

Date: May 20, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

5